by Federal v. U.S. Mr. McHale, please proceed. Thank you, Your Honor. May it please the Court? The Court of Federal Claims judgment in this pre-award protest should be reversed because the trial court committed two legal errors. First, while the Court properly found that the solicited RAC services were indeed commercial items, and second, that the new payment terms that they introduced in the follow-on solicitations were inconsistent with customary commercial practice, the Court erred as a matter of law in concluding that CMS did not violate FAFSA or FAR Part 12 by including those terms in the follow-on solicitations without obtaining a waiver. Can we go to jurisdiction first? Absolutely, Judge Shen. Why didn't you file in the Court of Federal Claims while the solicitation period was still open? Well, we filed at the Government Accountability Office. We filed a timely – there's no doubt that we filed a timely protest at the Government Accountability Office. We filed before the submission of proposals, and we have continued to diligently pursue that line that our protest rights to try and vindicate. Was there something stopping you from filing at the Court of Federal Claims? You have an election of remedies, and, of course, Congress, in enacting the ADRA and conferring jurisdiction on the Court of Federal Claims, made plain that those remedies can be sequential. You can go to GAO, and then you can go to the Court of Federal Claims afterwards on a bid protest, and then ultimately up to the circuit, and you can even start out before you go to GAO at the agency level by submitting an agency-level protest. But by the time you filed at the Court of Federal Claims, the solicitation period was over, right? By the time we submitted at the Court of Federal Claims? The complaint, yeah. Sure. By the time – yes, we had submitted at the Government Accountability Office before the submission of proposals, which is exactly the process that is longstanding and prescribed. So we submitted our protest. At the time, what we viewed, and I think all parties viewed, as controlling law at the GAO, a case called Verizon Wireless, on the topic. We filed it at the Government Accountability Office. When the Government Accountability Office rejected our protest and overruled Verizon Wireless and said it wasn't going to follow Verizon Wireless anymore, we immediately, within a couple of days, were here at the Court of Federal Claims. Was there any kind of stay of anything as a result of the GAO filing? Yes, there is, Your Honor. Do you think that is? Yes. Under the Competition and Contracting Act, if you file a pre-award protest, as we did here, prior to the submission of proposals, then the government is prohibited from awarding the contract until the protest is resolved. But that doesn't somehow extend the closing of the bid submission period, just the actual issuance of the award. That's right. The agency sets the proposal submission deadline. And as long as you submit before that, then you are timely. And then once you come to the Court of Federal Claims, as we did here at that point in time, you have to either argue for injunctive relief and get an injunction, a preliminary injunction or a TRO, in order to continue to stay the award of any contract under the solicitation, or the government has to agree, or there is no enjoyment of the government's ability to award a contract. Here, what happened is we had the automatic stay at GAO. We filed at the Court of Federal Claims. In response to our motion for temporary injunctive relief, the government agreed not to award a contract until the protest had been resolved. They extended that at the request of the trial court. And then once the trial court entered its decision here, we then moved for an injunction pending appeal, which the trial court granted. Why are you a prospective bidder to have standing at the time you filed in the CFC, at that moment, not some earlier period, not some later period, but the moment of your filing, you had to be a prospective bidder, right, under the law? Standing is... Am I correct about the law? Do you have to be a prospective bidder at the time of your CFC filing in order to file? You have to have standing. Yes, standing is assessed at the time of filing of the complaint. Having our cases, for better or worse, adopted the standards that in order to be an interested party and therefore have standing, you have to be either an actual or a prospective bidder. Yes, the test is are you an actual or a prospective bidder whose direct economic interest... Right. So which one are you, an actual bidder or a prospective bidder? No, no, no. We very intentionally did not because we cannot. That's right. We are a prospective offeror. There's no doubt that we were a prospective offeror for GAO under the GAO test. The government admits that we meet the GAO test. What the government argues is that this court somehow in rec services created a jurisdictional chasm between the GAO's interpretation of interest party and the Court of Federal Claims. There is no jurisdictional chasm. The test is the same. Are we a prospective offeror with... The test is applied differently so that when you went to the GAO, the bidding period was open. When you went to the CFC, it wasn't because you wanted to actually get an answer from the GAO and you didn't want to essentially cut short that period, which I mean cut short the GAO process, which I gather would have happened if you went to the CFC first. Not first, but if you... Under the GAO's rule, if we had decided to go to the Court of Federal Claims, the GAO would automatically dismiss its protest under its rule. To answer the first part of your question, they have said that there is a difference of test, that the test that applies is different as interpreted by, they claim, this court's case law versus the GAO test. Their position is based on what is a plain misreading of four cases. The rec service case, the MCI case, the Digitalis case, and federal data. Those four cases. In each of those four cases, all of those cases are instances where a protester failed to diligently pursue its protest options. Every single one of them, and I can go through each of them if the court would like. We've addressed them in our briefing and we'd be happy to address them further. But in each of those four cases, the protester did not diligently pursue its rights. And we have the exact opposite situation here. Would you say that RECS didn't diligently pursue its rights because there was a nearly three-month delay after the agency rejected the protest and before it then filed its Court of Federal Claims challenge? Is it the three months that reflects the non-diligent pursuit? It's the three months. There are two aspects to it. One, it's the three months coupled with the fact that they did not pursue, once the agency denied their agency-level protest, either a GAO protest or a Court of Federal Claims protest. They just let it go. But wait, they didn't let it go. They ultimately did file a Court of Federal Claims protest. They just did so three months later. Yes, Your Honor. And completely separate on a wholly separate ground than the grounds in the initial protest. The initial protest… Well, I could see that issue going to waiver, right? You appealed in one forum or brought an issue to one forum. You can't much, much later in time bring a whole different issue to a different forum. I could see how that could go to a waiver theory like a blue and gold waiver theory. But what I'm having trouble with is how that would affect the definition of prospective bidder. I understand that that is a distinction between this case and Rex, and you want to capitalize on every distinction. I'm not sure you need that distinction, but I'm also not sure it's a relevant distinction that we ought to import into the law of what the definition of prospective bidder is. Because you're a prospective bidder if you're somebody who would have bid. Does it really matter which of the reasons you argued before the agency is the reason you didn't bid? And does it really matter whether you argue a slightly different reason before the Court of Federal Claims? Does that really affect the notion that you are at all times, nonetheless, a prospective bidder? I see the time lag, but I don't know about that argument. Two answers to your question, Judge Moore. First, I don't think that it matters. The real question is, are you a qualified bidder who would be in a position to bid in the event that the remedy that you've requested in your pre-award protest is granted? And you look at the cases, you look at each of those cases, and they all are consistent with that test. I hear you that they're consistent with that test, but many of them have absolutely unequivocal language, like federal data, that says you are not a prospective bidder if you are simply someone who would have bid on a re-procurement if the agency part of the solicitation isn't likely corrected. You cannot be considered a prospective bidder in that. So is that the definition you're seeking, or am I misunderstanding the definition you're seeking? Because I feel like I'm bound by those other cases. As the Court wrote in Digitalis, and it was very specific, you can't analyze standing in a vacuum. And you can't analyze the test in a vacuum. And they are fact-bound considerations. And the test that was applied in each of those four cases made utter sense, made complete and wholesale sense in the context of those cases. Okay, I'm a little scared because you didn't answer my question. I'm trying to. I know, but my question is precise. Is your definition of prospective bidder broad enough to encompass someone who claims they would have bid if the solicitation resulted in a re-procurement to their liking? Our definition of a prospective offeror is a qualified bidder who is challenging the terms of a solicitation in a pre-award context. And if the Court had the authority to and did grant the remedy requested, would be in a position to bid. That is consistent with the GAO test. That is wholly consistent with the WEEKS test, which is the pre-award test. The four cases that were off on a lark, and it's a complete distraction, the four cases that the government relies on are not pre-award cases. Federal data gets a little bit confused because there was an award and then everything happened during negotiations over settlement. I think all these cases are somewhat confusing, to be honest with you, and I don't have any objection in a vacuum to the definition you proposed. It's possibly a much better one than the one I feel like we've adopted, but I do feel nonetheless bound by these four cases, so I've got to be able to weave my way through them. But particularly federal data, this is the quote. When it's talking about what it means to be an interested party and in particular a prospective bidder, it says, reference to a prospective bidder in the definition of interested party in the statute does not include one who only intends to bid in the event of a re-procurement. And there's another case which actually quotes that language of ours, so I'm finding it a little difficult to circumvent that as limited to the facts of federal data or ignore it as non-holding. It isn't that I disagree with you. It's that I'm feeling a little confined. And you're not, and here's why you're not. Number one, again, these are all, what we're looking at are cases with just very unique factual circumstances and that are largely in the post-award context. Weeks is right on point. Weeks is a pre-award protest case, and Weeks, the test that the court mentions in Weeks is that you have to show a non-trivial competitive injury that can be addressed by judicial release. That's totally consistent with the GAO's test, and that was met where Weeks intended to bid as a capable contractor and has relevant experience just like CGI. So remind me, it's federal data post-award case, and then your case is a pre-award pre-bid case? Yes. Fed data of the four. The other three are plainly post-award. Fed data operates after an award had been made, and then they're trying to figure out in the context of correction action how to move forward. But I want to give Judge Moore a really clear answer. Two things. First of all, federal data, if you go to the last page of federal data, it says what federal data could have done. It could have continued to compete for the contract award as the other bidders did, and could have utilized the protest procedures available to an interested party to correct any deficiencies that are perceived in the procurement process. The problem with fed data is it didn't choose to do the latter. It did not choose to avail itself of the protest processes to correct the deficiencies in the solicitation. And if you look at the language in MCI and RECS, both RECS and MCI say that an interested party is someone, for example, in the context of RECS. RECS says RECS isn't an interested party because they didn't submit nor did they file a timely bid protest in the court of federal claims. MCI says the same thing. An interested party is one who actually submitted a proposal or filed a timely protest. There is no argument that we filed a timely protest here. We did. We filed in the GAO before the proposal submission, and as Judge Williams correctly and aptly addressed the government's argument that basically because the protest process was going on at GAO at the time, and afterwards had to submit the bid, that doesn't somehow automatically divest us of interested party status. So whether I think I could go all the way with the definition that you seek, that you say is the one the GAO adopted, or whether I feel confined by this precedent in some manner, isn't there a narrow ground for you, which would be we were a prospective bidder undisputedly until at least the day GAO issued its decision. Did we mystically cease to be a prospective bidder in the day and a half it took us to file in the CFC? Isn't that possibly a way that this case gets resolved that doesn't require me to do battle with other evidence? It is. And it goes to the heart of your diligently pursued, I mean, really, can I put it in a little box? It is, Your Honor, and that's what Judge Williams did. That's precisely what Judge Williams found. And the way that we look at it, and it's completely consistent with what you just said, is that our protest here at the Court of Federal Claims was part and parcel of our, and now we go to the language of the cases, effort to utilize protest procedures available to an interested party to correct deficiencies in the procurement process. And that's precisely what we did. What am I supposed to think of that process as? By filing in the GAO, do you somehow toll the timing for getting to the Court of Federal Claims on time, or is that more like a preservation of rights? What's the right way to characterize this? The right way to characterize this is that Congress set up a scheme, and the scheme is that you can submit a protest to an agency, you can then submit a protest to a GAO and be timely, you can then go to the Court of Federal Claims, and then you can ultimately come here. And that's seriatim. This is sequential. You can also file at the same time in all three places? No, you can't. The agency protests, they're divested of jurisdiction once you go to GAO, and GAO is divested of jurisdiction once you go to the Court of Federal Claims. But you can go straight to the Court of Federal Claims? Sure you can. Of course you can. Yes. You can always go straight to the Court of Federal Claims. I think we have your argument, Mr. McAllister. Oh, did you want to ask a question? Can I just ask on this question that we've been spending some time on, on interpreting of language in federal data. I'm not entirely sure whether you said that your position comes within the literal language of the quote that was read to you, or whether you're saying that that quote has to be read or modified or softened or in some way not given its literal effect by virtue of the context. Is it possible that the declaration that an interest in a re-procurement alone isn't enough can be understood, not in a technical sense of re-procurement, but to mean that as long as this procurement is open and you are aggressively pressing your right, that what you're trying to do is to get into this procurement? The answer to your question, I think, as I understand it, is yes, and it is consistent. You can't just read that one sentence in federal data without reading the other two sentences that I read in the last paragraph of federal data that say that what you really have to do is to either submit an offer or pursue your protest remedies that are available to an interested party. And so I think it fits within A, the context of federal data, and B, the general test at the end. To follow up on that, and I also think this is a helpful question, so please try to take it as such, but I think to follow up on that, could it be that this sentence I read to you means if this is all you're bringing to the table, is you're coming to the table after bidding is closed and you've done nothing, and the only thing you're saying at that point in time is, I'm a prospective bidder because if I can get you to unravel this process and offer a re-procurement, I'm in. And then the rest of the opinion, which has, you can be a prospective bidder by actually following a protest. I mean, maybe this sentence is relegated to a universe where there wasn't a protest. The answer to your question is yes, but it's even worse for the government's position that we're not an interested party because you have to actually read the Federal Circuit's decision in light of the Board of Contract Appeals' decision that was an issue on appeal. What these guys did in federal data was they expressly said, we are not interested, we're not going to compete in this second competition, period. When they say that they're interested in a re-solicitation, all they were saying is, if somebody, if for some reason the government decides to cancel the solicitation down the road and conduct a new competition, then we would be interested in participating. It has nothing to do with their protest allegations or the protest grounds for which they were being assessed, for which the board and the Federal Circuit was trying to assess, are they an interested party. I understand your argument, but your argument wants me to conclude the language is simply dicta under the facts of the case, and I'm trying to give the language meaning and nonetheless find a way in which the protest part at the end has meaning too. And I think you can give that language meaning by the context of the case. As Digitalis expressly said, you cannot on these standing issues, on these interest party issues, do the analysis in a vacuum. They are fundamentally informed and animated by the factual context in which they arise. Can I ask you one question that's almost a merits question? Yes, I'd love to get there. I know you would. If we were to agree with you on your customary terms argument, do we need to reach the unduly restricted competition? No, you do not. Okay, let's hear from the government. Thank you, Your Honor. We'll restore your three minutes of rebuttal time. Thank you, Your Honor. Is it Rael? Rael. How do you say it? Rael. Rael, okay. Mr. Rael, please proceed. May it please the Court. CGI does not have standing to protest the procurement at issue because it's not an actual or prospective bidder. CGI could have submitted quotes for the procurement at issue, but simply chose not to. Instead, CGI protested at the Government Accountability Office, which did not… as an illegality in the solicitation. It protested at the Government Accountability Office. That's correct. CGI has the right to do that. Which held up the award. It held up the award. It didn't hold up the deadline for submitting bids, though, and that's been the focus of this Court's process. But do you agree that they were a prospective bidder at the time they filed the GAO protest? At the time they filed the GAO protest. Were they a prospective bidder throughout the GAO protest? Because I imagine if they weren't, standing would be removed. Like, suppose they came out and said, we've decided we have no interest in this contract. We won't bid for it no matter what. Well, jurisdiction in the GAO would no longer exist, right? So they have to… In order to have standing, you've got to have standing throughout the whole case. So they had to have been a prospective bidder at all times in the GAO protest, correct? Well, standing is determined at the time the… I sue you over a contract, and then I sell the rights to Judge Taranto. Am I allowed to continue to pursue you for continuing to breach the contract even though I no longer own it? I had standing at the time I brought the suit, but I ceased to be the owner of the contract. No, I wouldn't think so. Standing has to actually… Yes, you're right, it's judged at the time of the suit. But you have to have standing throughout the proceeding. If something causes you to no longer have standing, doesn't that move the proceeding? Yes. As a general matter, yes. The mootness and standing test can be a little… There's additional factors to be considered in mootness that aren't present in standing, but yes, generally. Is it your position that on February 7, 2014, which I gather was the closing date for the bids, at that point, even though this was a couple of months away from completion of the GAO proceeding, CGI lost its status as a prospective bidder? It lost its ability to be a prospective bidder in the Court of Federal Claims because it had not filed its suit yet. Why did it not lose its prospective bidder status in the GAO? Isn't that governed by a statute, in fact, which unlike the CFC statute, actually has that language in it? Under this Court's precedent, I would say yes, it will lose its prospective bidder status at that time in the GAO as well. Is the GAO process one that's adversarial or at least one in which the agency is participating? Yes, it is. Did the agency suggest to the GAO on February 8 that CGI was no longer a prospective bidder because the date had just come where bidding was closed? No, it didn't. And the GAO test has developed differently than the test in this Court. I'm sorry, how could that be? Am I wrong in thinking that the CFC test, the 1491 test, which actually doesn't even have the language in it, we've imported the language from two other statutes, one in the GAO statute? Yes, that's correct. So how could there be a different test? This Court did import the language from CICA into the definition of interested party in 1491b1. It didn't import every single GAO interpretation of the term prospective bidder or actual bidder, direct economic interest from the GAO's case law. In fact, in AFSCME, the case that the plaintiff cites several times, one of the things that Court relied on in importing the definition from CICA rather than from the APA was the need to construe the term interested party narrowly as a waiver of sovereign immunity. I really don't understand. I'm completely perplexed by your answer to Judge Toronto's question. Are you saying that when they file the GAO protest, they're a prospective bidder, but throughout the length of the GAO protest, during which time they are vigilantly fighting the solicitation as being improper, that they are not a prospective bidder throughout that process? Under the Court's precedent, once the date for filing has passed, or for submitting bids has passed, if they could have submitted a bid and chose not to, then they are not a prospective bidder. Can't they demonstrate their prospective bidder status by filing a protest? Doesn't our case law say by filing a protest, they establish their prospective bidder status? No, the case law doesn't say that. In fact, REC Service says quite the opposite. REC Service said it was not relevant that the plaintiff filed a pre-award protest, a pre-award protest that was timely, nor was it relevant that they were saying that illegalities prejudiced their ability to bid. What was relevant was that when they came to the Court of Federal Claims, the time for bidding had passed and they had not submitted a bid. The nature of the protest in REC Services was different from the grounds of the post-award bid protest challenge, right? It was different, but the federal data protest was in fact essentially a pre-award protest. It occurred after an award and then going into corrective action, but that is effectively a pre-award protest. Tell me, how long do these GAO processes last? 100 days. 100 days? Yes. And are, I don't know, are they like an administrative proceeding? Essentially, yes. So, why wouldn't it be appropriate to look at that as, you know, under background principles of administrative law, you want to try to exhaust your administrative remedies before going to federal court? Because there's no exhaustion requirement. It's not a mandatory administrative remedy. As Plans Council stated correctly, they could have come straight to the Court of Federal Claims at any time prior. It may not be mandatory, but in trying to give some sensible, concrete meaning to a term that, to put it mildly, doesn't have a clear and immediately apparent definition, what it means to be a prospective bidder, why doesn't it make sense to say that Congress more or less encouraged use of the GAO process? There's something that might be described as some deference in the CFC, once the GAO has said what it has to say, as essentially part of an interpretation of prospective bidder, that when the GAO process, encouraged to be used, is being vigilantly used, and then there's no material delay, Wednesday to Friday, Wednesday to Monday or something, in going to the CFC, that the prospective bidder status that existed at the beginning of the GAO process hasn't been lost. Because there's no basis in the law for stating that the GAO tolls the ability to become a prospective bidder. The case law is clear that once the time for submitting bids has passed, if the plaintiff could have submitted a bid and did not, that it's not a prospective bidder at that time. So the more onerous the condition that's being challenged in the solicitation, the harder it is for somebody to say, well, I'm going to roll the dice, take a chance that I'll actually win this thing under this onerous condition, rather than challenge the condition without subjecting oneself to the risk of being bound by it. That somehow, that that's the regime that you have in mind? Well, the way to avoid that is to come straight to the Court of Federal Claims. And bypass the GAO process, which plays a, I guess, a congressionally encouraged role. It plays a role, but Congress certainly didn't mandate protesters to go to the GAO before. Right, but if we follow your rule, then one could never, as a practical matter, go to the GAO for this type of bid protest, right? You'd always run out of time to get a final answer from the GAO and still have time before the solicitation period ends to get to the Court of Federal Claims. Well, not if you submit a bid as HDI did, the other protesters. That's for actual bidders, but I'm talking about for prospective bidders. Do you realistically think that a prospective bidder who wanted to protest at the GAO could get a resolution from the GAO in time to still file a Court of Federal Claims complaint, bid protest action, before the end of the solicitation period? No, that's not likely. In most circumstances. I guess, based on the discussion you just had with Judge Chen, one question it brings to my mind is, do you believe that there's anything in the statute or in regulations or anything that suggested that Congress meant to have multiple forms of redress for actual bidders available to them and single forms of redress available or not in series forms of redress available for prospective bidders? My question to you is, it seems quite clear an interested bidder could absolutely go in series, agency, GAO, CFC, and have three bites at the apple. That's what Congress intended, and that's what is allowed to happen. The universe of the way that you've defined prospective bidders would absolutely, in practice, create a circumstance where they would definitely not have the availability of three bites at the apple, and is there anything that would suggest that Congress meant for differing treatment between actual bidders and prospective bidders in some way? In terms of the redress available to them. If the plaintiff chose not to insert itself into the competition by submitting a bid, then at the very least that's the interpretation that's been given by this court of the term prospective bidder. Prospective bidder, to my understanding, is not defined in the statutes, but it's been interpreted by this court as closing off once the time period for submitting bids has ended. Right, to establish yourself as a prospective bidder, right? You can't establish yourself as a prospective bidder after the time period has expired. But why didn't they establish themselves as a prospective bidder by virtue of filing the GAO protest? Because that doesn't toll the period by which they... It's not a matter of tolling, they established it. They had to establish themselves as a prospective bidder by the time the bidding period ended. They did. Well, they didn't establish that they were prevented from bidding. That's the language in rec service. That's a footnote in rec, but I don't actually think that that footnote is relevant. Why aren't they a prospective bidder by virtue of having pursued the protest prior to the bid period expiring? Because when it came time to submit bids, they didn't put themselves into the competition. They did. They put themselves into the competition by virtue of protesting with the GAO. Why doesn't that establish their status? That didn't put them into the competition. They simply said we have a problem with the terms of the solicitation. Not one that has to stop us from, not one that they've demonstrated stops them from bidding, but one that they don't like those terms. They prefer to go under different terms. No, it's not that they don't like those terms. It's that they actually think those terms are illegal. It's a slight little tweak of a difference. I don't understand. I just don't understand your argument about why that doesn't establish. I can understand your argument that concluding that might run into our rec case law. I can understand that argument. I don't understand how it doesn't establish them as prospective bidders at that point. Because they need to establish that they're a prospective bidder on the date they filed suit in the Court of Federal Claims. At that time, the period had passed for submitting bids. They did not submit a bid. Under rec service, under federal data, under MCI, all those cases, they're not a prospective bidder at that time. The fact they want a re-solicitation, that doesn't matter. They did not submit a bid prior to the deadline, and that's the relevant inquiry in this court. Can I ask you a merits question? Yes, absolutely. Do you disagree that the consequence of your position about their first merits issue is that in the master contract under the Federal Supply Schedule, you can leave out significant terms, and then in orders under the master contract, insert highly non-commercial customary terms, and there would be no objection to that? In the master contract, yes. So you're not changing anything in the master contract. They're just certain terms that you're going to have to have once you actually have an order, and you're now adding them in the order, and those would not, by assumption of my question, constitute commercially customary, or whatever the proper term is, terms. You're saying that the relevant FAR and statute permit that to take place? Yes, the FAR and the statute permit that to take place. It's conceivable that that could happen, and that's something that plaintiff needs to address, or the contractor needs to address at the master contract level. But it has a problem with that, because that's the purpose of these indefinite delivery contracts, the FSS in particular. My time is up. Can I finish this? Of course. Thanks. That's the purpose of these indefinite delivery contracts, is to provide for a simplified process at the order level. You take care of the hard work of the contracting up front. You comply with Part 5, Part 6, Parts 13, 14, or 15, whichever is applicable, small business analysis. And then when you get to the Part 12 as well, the commercial item section, and then when you get to the order level, you follow a simplified process. You don't have to go through all this again at that level. If plaintiff had a problem with the fact that the order could include this term consistent with the GSA contract, they should have addressed that at the master contract level. What was the mechanism for addressing that? Say you left price terms or something quite obviously of economic significance in the ultimate decision to supply something and get paid for it out of the master contract. What procedurally were they supposed to do? They could seek a modification with GSA. If that failed, they could have protested the terms of the GSA contract. Is it correct on the merits point that there isn't a dispute that the waiting until the second review to pay compensation or commission is contrary to customary commercial practices? Am I to understand correctly that that isn't really in dispute? That's not in dispute for purposes of this appeal. We don't agree that that's something the court should have addressed. It addressed that de novo. The agency didn't address that because it didn't believe it needed to. Both the GAO and the Court of Federal Claims have found that it didn't need to. But ultimately, that's a decision the agency should be making. But for purposes of the appeal, no, it doesn't matter. Wait, so for purposes of this appeal, you are agreeing that it was not a customary commercial practice, but you are, I want to be very clear, you are not relinquishing the agency's right to change its position on that below. You're saying you stipulated to it solely for what purpose? I'm trying to understand. I want to understand the context. I was understanding that this was not an issue that was in dispute. I wouldn't say we stipulated to it. We've never disputed it because it's not relevant to the issues. What's relevant is whether the agency was required to go through this process of obtaining market research, determining whether terms are consistent with customary commercial practice, and then obtaining a waiver. If they're not, it's undisputed they didn't do that. That's the relevant point. The relevant issue is whether the statutes and regulations required them to do that. It would have been highly relevant to defeating a critical factual premise for their legal contention, defeating their argument to say you don't have to decide any of this legal stuff. The fact is the term that they're complaining about was perfectly customary as a commercial matter. I suppose it's a matter of prejudice that could have come into play. We didn't make that argument, so we're not saying the court should decide this case based on the fact that these terms are, in fact, consistent with customary commercial practice or anything like that. But by failing to dispute the argument, haven't you effectively conceded it? Suppose that we don't agree with you on your construction argued about the statutory terms, and suppose we absolutely think that this falls within this section of the FAR, this acquisition solicitation, and we conclude that you're wrong on the legal point. Once we get to that point, what do we do? You have not disputed that it's not customary, so isn't that the end of the inquiry? If we think they're right on the legal point, you seem to have acquiesced on the factual point. For purposes of deciding the appeal, yes, I believe that's correct. We would still say it's the agency's ultimate role to do the market research and determine. In the litigation, suppose, again, the assumption we got to the point that Judge Moore just recited, do we remand, and in such a remand, does it remain open to you as a litigation procedure matter to say this term is actually commercially customary, or for purposes not just of the appeal, but of the litigation, is that issue settled? For purposes of litigation, we would say yes. I'm sorry, yes doesn't, I don't know what you just said yes to. Because I asked an or question. Oh, I'm sorry. For purposes of the litigation, yes, we're not disputing that these were not consistent with customary commercial practice. If for some reason this had to go back to the agency, we believe the agency should be permitted to do the market research and make that determination itself, not simply rely on the limited declarations that have been supplied by CGI. One more question. Sure. Why would it go back to the, at this point, suppose we agree completely with them on the merits, you haven't disputed it's not customary, what's left to be done? Well, at that point, if the court agreed that injunctive relief, or the trial court agreed that injunctive relief were appropriate, it would presumably enjoin the agency from proceeding with awards of the task orders at issue unless and until it makes a, it goes through the process it's supposed to in doing the market research, determining whether these are consistent with customary commercial practice, and if not, obtaining the waiver necessary. So you're saying there wouldn't necessarily be a re-solicitation with these particular terms stripped out? Not necessarily, not if the agency obtained, not if the agency either made a rational determination that they are not consistent with, that they are consistent with customary commercial practice or obtained a waiver if they are in fact not. There's no bar on obtaining, on including terms that are inconsistent with customary commercial practice. The bar under the FAR provision is only on you have to obtain a waiver if you're going to do it. I don't understand why that ship hasn't already sailed. I mean, you had a chance throughout this litigation. They clearly put this issue in issue. You chose not to dispute it. I don't understand what set of circumstances on remand allows you to reopen that issue, take it back to the agency and allow them to potentially proffer an argument about whether it is or isn't customary. It's because of the limited nature of the APA review at issue here. The agency, the court's determining whether the agency followed the law here. Did it conduct the market research or make the determination to obtain a waiver if necessary? There's no dispute they didn't do that because our position, the agency's position all along, is that they didn't have to. So we shouldn't have been having a dispute de novo about whether or not these terms are, in fact, consistent with customary commercial practice. That should not be a part of the APA review here. That's why we didn't go out and do research or submit any contrary evidence on that point. That's what the agency should do if it's required to. I don't understand why that's not part of the APA review. The agency took an action that they're saying is illegal. The action would not have been illegal if, in fact, the action the agency took was consistent with commercial customary practices. But in order to demonstrate that it was consistent with customary commercial practice, we would have to go outside the administrative record, start seeking. We basically have to do the market research that we don't believe the agency is required to do under statutes and regulations, then move to supplement the record to include that in the administrative record so the court can essentially make a de novo determination of whether or not these terms are consistent with customary commercial practice. That's not the court's role in this type of proceeding. It's simply for purposes of this issue, what the agency required to follow these statutes and regulations that CGI says they were. If they were, they didn't do that, and that's for purposes of this case, the end of that issue. Okay, thank you. Thank you. Mr. McAuliffe, you have... I'll be quick here. Well, I mean, it says 8 minutes and 40 seconds. What? Well, what is Mr. McAuliffe's remaining time? Oh, zero? Okay, why don't we give him 5 minutes, and he went over by 8 minutes and 40 seconds. I think 5 should do it. I'll be quick here. Can I just ask you, can you respond to government counsel's answer to my question about why basically you shouldn't have been required at the master contract stage of things to insist on all the terms that are of significance so that there wouldn't be a meaningful dispute at the order stage? It has to be a fair question because Judge Williams asked the same one below and commented on it in her decision. The assignment of blame that the trial court placed on CGI for not anticipating countless terms... I don't mean in this case specific terms. I mean, this is a question about interpreting the statute. Sure. I think the government's position is something like, in general, when you read this statute, the way that it sensibly is supposed to work is that everything significant should be done at stage one so that it makes perfect sense to say at stage two, we won't have a worry about application of the commercial customary. The federal supply schedule, which is really the source of your question, is a vehicle that is intended to take advantage of the government's bulk buying power for commercial items by getting best pricing on commercial items using commercial terms. So you start with that premise. The overall federal supply schedule contracts are largely, and this isn't in the record, but I think Kingdomware may address it at some level. They're largely the Part 12 clauses, 52.212-4-5, the clauses that are consistent with customary commercial practice and that are required by law. So there are lots and lots of unanswered issues in a federal supply schedule contract about an individual ordering agency and what they may need in their orders. So if I thought it was relevant to try to get a realistic assessment of whether the federal supply schedule is a vehicle that is intended to take advantage of the government's       I think that's a good point. You can almost think of it as a charge account. You're putting together the basic core terms. If there's something different, the FAR specifically says how you deal with that. And what the FAR says is that in any commercial item contract, you cannot put in any contract or solicitation, and that's key because this is the undisputed part about what they violated. You cannot contain in any solicitation, this is FAR 12.301A and 12.302C, cannot include in any solicitation for commercial items additional terms that are inconsistent with customary commercial practice. Solicitation is defined in FAR 2.101 to include RFQs, which is the form of solicitation that operated here. There can be no serious dispute. They violated that. They included terms that the trial court found as fact, and they are not subject to clear error, getting to the other point you were discussing, Judge Moore, with Mr. Rayl. The trial court found as fact that these terms are inconsistent with customary commercial practice. What was the basis? I'm sorry, so that was a... Tell me if I've understood what you've just said right, that the existence of the particular regulation that you just cited implies contemplation of the possibility that there will be contractually significant theft, which is to say that the parties care about this term that might be contrary to customary commercial terms, and it says you, the government, can't ask for those. You cannot put them in a solicitation. I don't understand why you're fighting me because... Oh, I'm not. I'm agreeing. We're in violent agreement, I believe. Okay. Then this made me... Okay. I apologize, Your Honor. 12.302c is exactly on point here. Yes. You cannot, if there are additional terms that you want to include, government, in a solicitation for commercial items, which is exactly what we have here, you cannot include them if they are inconsistent with customary commercial practice without going out and doing market research and obtaining a waiver, and GSA prescribes the person from whom they have to get the waiver, which is the senior administrator for procurement, way up here. So, yeah, and... As a practical matter, what happens now if you prevail in this appeal? Like, what happens, what goes next? Well, it sounds like we may have a disagreement. Our position would be that the court, having already found, as fact, based on unrebutted evidence that we submitted and the government did not oppose or submit countervailing evidence, that the court has found, as fact, that the terms are inconsistent with customary commercial practice. As a result, our position would be that we would tell Judge Williams, if this court didn't do it and just remanded, we would tell Judge Williams, you need to enjoin them from any awards based on the current form of solicitation. They have got to eliminate the offending terms, and if they replace them with some other terms, then they will look at the new terms once they are issued as if they're offending. Just to be clear, by virtue of not presenting an argument or evidence related to the fact question of whether this is part of or is not part of the customary practice below, you think they've effectively waived, at the agency level, the ability to go back ex post and justify an identical solicitation in a re-procurement that would nonetheless contain those terms? We think it's very true to cost. This has been found. The court found this, and it is not subject to the clear error test because it's unrebutted testimony. It's based on unrebutted declaration. So what they could do is pursue a re-solicitation with the same terms after securing a waiver. That wouldn't be inconsistent with the determination that these terms are definitively and finally and preclusively determined to be contrary to... Customary commercial practice. They would say, but we can do it if we get the right approval. That may be. That may be the case, yes. That may be. I'm way over my time, Judge. If you have a final thought you'd like to make, go ahead. At the end of the day, what the government is asking for here is this court to bless a scheme by which Congress set out in FAFSA to attract commercial companies that were not in the government marketplace to the government marketplace by dealing with them solely on commercial terms. And their argument is, well, while that prohibition, that proscription may apply to the overriding federal supply schedule contracts themselves, they don't apply to the underlying orders themselves. That construction, A, would violate the entire purpose of FAFSA, but B, the exception that they advocate would swallow the rule because you can't get a good or a service under a federal supply schedule contract without placing an order. The only way you can get a good or a service is to place an order. So if the idea is you can't include it up here in the federal supply schedule contract, but you can include it in the order, which is the only way to get a good or a service, that would swallow the proscription itself. The last point Your Honor deals with goes back to jurisdiction for just one second, and I have to comment on this because the government is making the argument that we had to somehow, by the time of proposal submission, submit a bid. And that obviously would be a completely futile act under Dolan's. The act of submitting a bid would be one where we would have to submit a noncompliant quote that takes exception to the offending terms that we believe are unlawful, and then in a period when the government cannot, by statute, award a contract at any rate. That is the definition of futility. That is a futile act, but yet that's what the government says. That's not what the cases say, and MCI, and I'll just say it one more time, MCI and rec services say that. Okay, I think we have your argument firmly. Thank you, Your Honor. Thank you. Thank both counsel. Case is taken for submission.